1    Andrew James Govan Smith
    In Pro Se

2

3    1742 Yosemite Ave

   San Francisco, CA 94124

4    ajshrestha007@gmail.com

5    Phone- (415)-855-5968

6            **IN THE UNITED STATES DISTRICT COURT**

7         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8      **THE HONORABLE MAGISTRATE JUDGE SALLIE KIM PRESIDING**

9

10   ANDREW GOVAN-SMITH REVOCABLE TRUST,           )

11   a California Trust; ANDREW J GOVAN-SMITH        )

12   REVOCABLE TRUST, a California trust; ANDREW     )

    GOVAN-SMITH, an individual; and DOE 1 through DOE 5.   )

13   Defendants / Counter Claimants,                       )

14    V.                                                          )

15   PEOPLE OF THE STATE OF CALIFORNIA and CITY      )

16   AND COUNTY OF SAN FRANCISCO, by and through David   )

17   Chiu, City Attorney for the City and County of San Francisco and   ) Case no: 25-cv-04942-SK

18   in their official capacity Inspector Chris Francis Department of   ) MOTION TO COMPEL

19   Building Inspection, in their official capacity Inspector Gary       )

20   Clifton Department of Building Inspection, in their official        )

21   capacity Investigator Chelsea Liu Office of Cannabis Control, in   )

22   their official capacity Lt. Victor Wong San Francisco Fire        )

23   Department, in their official capacity Captain Dennis Sy San      )

    Francisco Fire Department, in their official capacity Officer       )

24   Brandon Murray San Francisco Fire Department, in their official   )

25   capacity DOE 1 through DOE 20 inclusive.                      )

26   Plaintiffs/ Counter Defendants.                             )

27                                                                              )

28

FILED

JAN 22 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL DISCOVERY**

2

**TABLE OF CONTENTS**

3

I. INTRODUCTION...................................................6

II. STATEMENT OF FACTS...........................................7

III. LEGAL STANDARD.............................................14

IV. ARGUMENT....................................................16

**PART ONE: INDIVIDUAL COUNTER DEFENDANTS MUST RESPOND TO
DISCOVERY**

A. Binding Precedent: Official Capacity Does Not Shield from Discovery...16

B. Individual Defendants Are Proper Deponents Under Federal Rules.......23

C. Plaintiff May Pursue Individual Capacity Claims......................24

D. Individual Defendants Have No Qualified Immunity....................26

E. The City's Blanket Refusal Makes Further Efforts Futile..............28

**PART TWO: CITY'S OBJECTIONS TO REQUESTS FOR PRODUCTION ARE
IMPROPER**

F. The City's Boilerplate Objections Violate Federal Rules.............28

G. Specific Requests That Must Be Compelled............................33

   1. Request No. 1 - Warrant Applications.............................33

   2. Request No. 5 - Evidence No Cannabis Found......................35

   3. Requests No. 14-16 - Policies and Procedures.....................36

   4. Requests No. 18-21 - Training Materials and Records.............38

   5. Request No. 17 - Pattern Evidence................................40

   6. Requests No. 25-26 - Other Lawsuits.............................42

   7. Request No. 27 - Statistical Data................................44

   8. Request No. 35 - Consent Documentation...........................46

H. The City Waived Objections by Producing Documents...................47

I. The City Failed to Provide Required Privilege Logs..................48

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

J. Discovery Sought Is Relevant and Proportional.......................51

2

V. CONCLUSION..................................................54

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL

1  TABLE OF AUTHORITIES

2  **CASES:**

3  **United States Supreme Court:**

4  Camara v. Municipal Court, 387 U.S. 523 (1967)

5  Clinton v. Jones, 520 U.S. 681 (1997)

6  Ex parte Young, 209 U.S. 123 (1908)

7  Hafer v. Melo, 502 U.S. 21 (1991)

8  Harlow v. Fitzgerald, 457 U.S. 800 (1982)

9  Herbert v. Lando, 441 U.S. 153 (1979)

10  Kentucky v. Graham, 473 U.S. 159 (1985)

11  Marshall v. Barlow's Inc., 436 U.S. 307 (1978)

12  Monell v. Dep't of Social Services, 436 U.S. 658 (1978)

13  Monroe v. Pape, 365 U.S. 167 (1961)

14  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)

15  Saucier v. Katz, 533 U.S. 194 (2001)

16  Scheuer v. Rhodes, 416 U.S. 232 (1974)

17  See v. City of Seattle, 387 U.S. 541 (1967)

18  United States v. Nixon, 418 U.S. 683 (1974)

19  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)

20  **Circuit Courts:**

21  Board of County Commissioners v. Brown, 520 U.S. 397 (1997)

22  Bowie v. Maddox, 642 F.3d 1122 (D.C. Cir. 2011)

23  Boyd v. Benton County, 374 F.3d 773 (9th Cir. 2004)

24  Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142 (9th Cir. 2005)

25  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003)

26  Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172 (3d Cir. 1999)

27  Kerr v. City of West Palm Beach, 875 F.2d 1546 (11th Cir. 1989)

28

MOTION TO COMPEL                                    4

1 | Montano v. Orange County, 842 F.3d 865 (9th Cir. 2016)

2 | Reed v. Bennett, 312 F.3d 1190 (10th Cir. 2002)

3 | Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir. 1992)

4 | Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994)

5 | **District Courts:**

6 | Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189 (S.D.N.Y. 2000)

7 | Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975)

8 | Clarke v. City of Los Angeles, No. CV 13-4853, 2015 WL 4623064 (C.D. Cal. Aug. 3, 2015)

9 | McPeek v. Ashcroft, 202 F.R.D. 31 (D.D.C. 2001)

10 | Mullin v. Phelps, 162 F.R.D. 448 (D.D.C. 1995)

11 | Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281 (C.D. Cal. 1998)

12 | Sali v. Corona Regional Med. Ctr., No. EDCV 09-00388, 2010 WL 2736524 (C.D. Cal. July 8,

13 | 2010)

14 | Thomas v. Metris Direct, Inc., No. 02-4970, 2003 WL 21267534 (S.D.N.Y. June 2, 2003)

15 | **RULES:**

16 | Federal Rule of Civil Procedure 15

17 | Federal Rule of Civil Procedure 26

18 | Federal Rule of Civil Procedure 30

19 | Federal Rule of Civil Procedure 33

20 | Federal Rule of Civil Procedure 34

21 | Federal Rule of Civil Procedure 36

22 | Federal Rule of Civil Procedure 37

23 | **STATUTES:**

24 | 42 U.S.C. § 1983

25 | U.S. Const. amend. IV

26 |

27 | **MEMORANDUM OF POINTS AND AUTHORITIES**

28 | MOTION TO COMPEL                    5

# I. INTRODUCTION

Plaintiffs/ Counter Defendants City and County of San Francisco has engaged in a coordinated pattern of obstruction designed to prevent Defendants / Counter Claimants from obtaining critical discovery. This obstruction takes two forms:

First, the City categorically refuses to permit any discovery from six individual City employees—Dennis Sy, Chris Francis, Gary Clifton, Victor Wong, Chelsea Liu, and Brandon Murray—who personally conducted allegedly unconstitutional searches of Defendants / Counter Claimants' properties. The City's position—that officials sued in "official capacity" need not respond to interrogatories, requests for admission, or depositions—has been squarely rejected by every federal circuit to consider it.

Second, the City has responded to Defendants / Counter Claimants' Requests for Production (See Exhibit B) with improper boilerplate objections copied and pasted into 95% of its responses, often while simultaneously producing responsive documents (thereby waiving the objections). The City has failed to provide even a single privilege log despite asserting privilege in dozens of responses. Most egregiously, the City has refused to produce documents essential to Defendants / Counter Claimants' constitutional claims: policies requiring warrants, training materials on Fourth Amendment requirements, evidence of patterns of warrantless searches, and other similar lawsuits.

The law is clear on both issues:

On Individual Discovery: The D.C. Circuit confronted the identical argument the City makes here and held: "The defendants argue that because they are sued only in their official capacities, they need not submit to depositions. We reject this argument." Bowie v. Maddox, 642 F.3d 1122, 1131-32 (D.C. Cir. 2011). The Second, Tenth, and Eleventh Circuits have reached the same conclusion. Official capacity designation affects liability, not discovery.

On Boilerplate Objections: "The duty to respond is not excused by simply objecting that a request is 'overly broad,' 'unduly burdensome,' or calls for information that is 'neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.' Parties cannot use

1  boilerplate objections to shield documents from discovery." McPeek v. Ashcroft, 202 F.R.D. 31,

2  34 (D.D.C. 2001).

3  Moreover, the City has made critical admissions in its deficient discovery responses:

4  - "There are no documents regarding warrant applications" (Response to RFP No. 1)

5  - No photographs, laboratory testing, or physical evidence of cannabis exists (Response to RFP

6  No. 5)

7  - No written or recorded consent documentation exists (Response to RFP No. 35)

8  These admissions establish:

9  - Fourth Amendment violations (warrantless searches without consent)

10 - False allegations (no cannabis actually found)

11 - No qualified immunity for Individual Counter Defendants (clearly established law since 1967)

12 The Individual Counter Defendants possess unique, firsthand knowledge essential to Defendants

13 / Counter Claimants' claims. Each personally witnessed the searches, made decisions about

14 entering without warrants, and has personal observations that cannot be obtained through entity-

15 level interrogatory responses drafted by the City Attorney's Office.

16 Defendants / Counter Claimants respectfully request that this Court compel the Individual

17 Counter Defendants to respond to all outstanding discovery, compel the City to provide complete

18 responses to critical Requests for Production without improper objections, and impose sanctions

19 for the City's bad-faith obstruction.

20 **II. STATEMENT OF FACTS**

21 **A. Background**

22 Andrew Govan-Smith is a 70-year-old San Francisco resident who has operated a legitimate

23 stone fabrication business, True Stone Distributing, for approximately 30 years, employing over

24 30 people and consistently paying taxes. See Exhibit P

25 This case arises from allegedly unconstitutional searches of these properties conducted by City

26 employees in June 2023 and April-May 2024. See Counter Claim. Mr. Govan-Smith alleges

27 these searches violated his Fourth Amendment rights because they were conducted without

28

1    search warrants, without his consent, and without exigent circumstances.

2    **B. The Properties and Alleged Cannabis Operations**

3    Mr. Govan-Smith previously lived at 1742 Yosemite Avenue and used the rear building as his

4    personal residence. After moving out, he converted the property to commercial use and leased it

5    to tenants for legitimate business purposes. The metal building at 1723-1727 Wallace Avenue

6    was constructed approximately 20 years ago (circa 2004-2006) by a previous tenant for that

7    tenant's legitimate commercial purposes, predating any alleged cannabis activity by nearly two

8    decades.

9    Mr. Govan-Smith hired a professional property management company to handle day-to-day

10   operations The City alleges "cannabis operations" at these properties, but to Mr. Govan-Smith's

11   knowledge, no actual cannabis plants or cannabis material was ever found. The City's allegations

12   are based solely on equipment that has many legitimate uses, including legal hemp cultivation,

13   indoor vegetable farming, aquaponics and others.

14   **C. The Searches**

15   According to the City's own Complaint in the related state court case, City employees conducted

16   searches on the following dates:

17   - June 13, 2023: Joint SFFD/OOC/DBI inspection of 1723-1727 Wallace Avenue

18   - April 16, 2024: SFFD inspection of 1742 Yosemite Avenue

19   - May 1, 2024: Inspection of 1742 Yosemite Avenue

20   - May 2, 2024: Inspection of rear building at 1742 Yosemite Avenue

21   The Individual Counter Defendants personally participated in these searches. Mr. Govan-Smith

22   was not present at all searches, did not consent, was never shown a search warrant, and was

23   never asked to sign a consent form.

24   **D. City's Discovery Responses - Critical Admissions**

25   On January 20, 2026, the City responded to Defendants / Counter Claimants' Requests for

26   Production. See Exhibit A.

27       **1. No Warrants Obtained**

28   MOTION TO COMPEL                                    8

In response to Request for Production No. 1, which sought documents relating to warrant applications, the City responded:

"There are no documents regarding warrant applications." See Exhibit A, Response to Request No 1.

This admission establishes that no search warrants or administrative warrants were obtained before City employees entered Mr. Govan-Smith's properties.

### 2. No Cannabis Found

In response to Request for Production No. 5, which sought documents evidencing that no cannabis was found, the City provided a carefully worded evasive response:

"CCSF...confirms it has no documents evidencing that 'NO' cannabis or cannabis related materials were found during searches of the properties." See Exhibit A, Response to Request No 5.

The City then stated it would produce only "photographs and correspondences regarding the abatement...provided by Defendant."

The City's response is notable for what it conspicuously fails to produce. The City does not represent that it possesses or will produce: (1) any photographs depicting cannabis plants taken by City personnel during the searches; (2) any laboratory analysis or testing results confirming the presence of cannabis or THC; (3) any seized cannabis material maintained in evidence custody; (4) any physical evidence of cannabis plants or cannabis cultivation materials; or (5) any photographic or video documentation created by City employees during the inspections showing the alleged cannabis operations. Rather, the City indicates it will produce only photographs "provided by Defendant"—that is, photographs taken by Mr. Govan-Smith himself after the alleged violations, documenting post-abatement conditions. Such after-the-fact documentation, created by Defendants / Counter Claimants rather than by investigating officials, provides no evidentiary support for the City's allegations that cannabis was present during the searches conducted on the dates in question.

### 3. No Consent Documented

MOTION TO COMPEL                                      9

1  In response to Request for Production No. 35, which sought documents supporting any claim that

2  Mr. Govan-Smith consented to the searches, the City stated only that it would produce

3  "photographs and video recordings of the inspections." See Exhibit A, Response to RFP No. 35.

4  The City's response is deficient in that it fails to identify or offer to produce any documentation

5  evidencing voluntary consent to the warrantless searches. Specifically, the City does not

6  represent that it possesses or will produce: (1) any signed consent forms executed by Mr. Govan-

7  Smith; (2) any audio or video recordings capturing verbal consent from Mr. Govan-Smith; or (3)

8  any written authorization from Mr. Govan-Smith permitting entry onto or search of the Subject

9  Properties. The City's representation that it will produce only "photographs and video recordings

10  of the inspections" is non-responsive to the request, as such documentation depicts the searches

11  themselves rather than establishing that Mr. Govan-Smith consented to those searches. The

12  absence of any consent documentation is legally significant, as the City cannot establish the

13  consent exception to the Fourth Amendment's warrant requirement without evidence that

14  voluntary consent was obtained.

15  **E. City's Pattern of Improper Objections**

16  The City asserted the identical boilerplate objection—stating that each request is "overly broad,

17  vague and ambiguous, compound, and not proportional to the needs of the case"—in over forty

18  of the forty-seven Requests for Production served upon it.

19  Notwithstanding these objections, the City subsequently produced responsive documents for the

20  majority of these same requests. This conduct establishes three material facts: First, the requests

21  were not vague or ambiguous, as evidenced by the City's demonstrated ability to comprehend

22  what documents were being sought and to identify responsive materials. Second, the requests

23  were not overbroad, as demonstrated by the City's ability to locate and produce a manageable set

24  of responsive documents. Third, the City's objections have been waived pursuant to binding

25  Ninth Circuit precedent, which holds that production of documents in response to a discovery

26  request constitutes waiver of objections to that request. See Richmark Corp. v. Timber Falling

27  Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992).

28
MOTION TO COMPEL                               10

1    Additionally, the City asserted privilege objections in over fifteen requests for production but

2    failed to provide even a single privilege log as mandated by Federal Rule of Civil Procedure

3    26(b)(5). This wholesale failure to comply with the privilege log requirement constitutes waiver

4    of all privilege claims asserted. See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court, 408

5    F.3d 1142, 1149 (9th Cir. 2005).

6    **F. Discovery Served on Individual Counter Defendants**

7    On December 21, 2025, Defendants / Counter Claimants served Interrogatories (Set One) and

8    Requests for Admission (Set One) on each Individual Counter Defendant named in this action.

9    These discovery requests seek information critical to the constitutional claims asserted herein,

10   including but not limited to: (a) the Individual Counter Defendants' personal observations and

11   firsthand knowledge regarding events that transpired during the searches of the Subject

12   Properties; (b) training received by each Individual Counter Defendant regarding Fourth

13   Amendment requirements and constitutional limitations on administrative searches; (c) each

14   Individual Counter Defendant's understanding of warrant requirements applicable to

15   administrative inspections and code enforcement activities; (d) the factual and legal basis upon

16   which each Individual Counter Defendant determined it was permissible to enter the Subject

17   Properties without obtaining search warrants; (e) whether any Individual Counter Defendant

18   obtained, attempted to obtain, or was instructed to obtain consent from Defendants / Counter

19   Claimants prior to conducting the searches; and (f) whether any Individual Counter Defendant

20   actually observed, photographed, seized, or otherwise documented the presence of cannabis

21   plants or cannabis material during the searches.

22   **G. City Categorically Refuses to Permit Individual Counter Defendants to Respond to**

23   **Discovery**

24   On January 20, 2026, Deputy City Attorney Sabrina M. Berdux, on behalf of Plaintiffs / Counter

25   Defendants City and County of San Francisco, sent Defendants / Counter Claimants a letter (See

26   Exhibit O) categorically and unequivocally refusing to permit any of the Individual Counter

27   Defendants to respond to any discovery propounded upon them. See Exhibit O.

28   MOTION TO COMPEL                                    11

1   The letter expressly states:

2   "To be clear, the following discovery requests that were served on December 21, 2025, are

3   objected to in whole as improper and will not be responded to:

4   Interrogatories to Captain Dennis Sy. See Exhibit C

5   Interrogatories to Chris Francis. See Exhibit D

6   Interrogatories to Insp Gary Clifton. See Exhibit E

7   Interrogatories to Lt. Victor Wong. See Exhibit F

8   Interrogatories to Chelsea Liu. See Exhibit G

9   Interrogatories to Brandon Murray. See Exhibit H

10  Request for Admissions to Dennis Sy. See Exhibit I

11  Requests for Admissions to Chelsea Liu. See Exhibit J

12  Requests for Admissions to Victor Wong. See Exhibit K

13  Requests for Admissions to Chris Francis. See Exhibit L

14  Requests for Admissions to Gary Clifton. See Exhibit M

15  Requests for Admissions to Brandon Murray. See Exhibit N"

16  The City's sole basis for this categorical refusal is its reliance on Will v. Michigan Dept. of State

17  Police, 491 U.S. 58 (1989), for the proposition that official capacity suits are brought against the

18  governmental entity rather than individual defendants, and therefore individual defendants sued

19  in their official capacity need not respond to discovery. As demonstrated in Section IV.A, infra,

20  this legal position has been squarely rejected by every federal circuit court to address the issue

21  and is without merit.

22  **H. The City's Position Is Absolute and Admits No Compromise**

23  The City's objection to discovery from Individual Counter Defendants is categorical and

24  unequivocal. The City's letter contains (See Exhibit O): (a) no offer to narrow the scope of

25  discovery requests; (b) no offer to limit the subject matter, topics, or temporal scope of the

26  discovery sought; (c) no offer to negotiate a protective order to address any legitimate concerns

27  regarding the discovery; and (d) an absolute and unconditional refusal to permit any discovery

28

MOTION TO COMPEL                                    12

whatsoever from the Individual Counter Defendants, based solely on a pure question of law. Because the City's position constitutes an unequivocal and absolute refusal to permit any discovery from Individual Counter Defendants under any circumstances, further efforts to meet and confer would be futile and serve no purpose. (See Section IV.E, infra.) The City has taken a legal position from which it has indicated no willingness to deviate, thereby rendering further conferral efforts a meaningless exercise that would only delay resolution of this discovery dispute.

**I. Specific Requests for Production Requiring Further Responses**

The following Requests for Production require the City to provide further, complete, and verified responses:

**Request for Production No. 1 (Warrant Applications):** The City responded that "there are no documents regarding warrant applications," thereby admitting that no search warrants or administrative warrants were obtained for the searches at issue. This response requires verification under penalty of perjury to establish definitively that no warrant applications or warrant-related documents exist.

**Request for Production No. 5 (Evidence Regarding Cannabis):** The City provided an evasive response stating it has "no documents evidencing that 'NO' cannabis or cannabis related materials were found." This semantic evasion must be clarified through a verified response stating with precision whether the City possesses any photographs, laboratory testing, physical evidence, or documentation establishing that cannabis was actually found during the searches.

**Requests for Production Nos. 14-16 (Policies and Procedures):** The City's objections to requests seeking policies on Fourth Amendment compliance, warrant procedures, and cannabis enforcement are frivolous and must be overruled. These policy documents constitute essential Monell evidence and must be produced.

**Request for Production No. 17 (Pattern Evidence):** The City improperly refused to produce documents evidencing its custom or practice regarding warrantless searches. This request seeks core Monell discovery establishing whether the alleged violations were isolated incidents or part

1  of a systematic municipal practice, and the City's refusal is without legal merit.

2  Requests for Production Nos. 18-21 (Training Materials and Records): The City improperly

3  refused to produce training materials and individual training records essential to the qualified

4  immunity analysis. These materials are directly relevant to whether the Individual Counter

5  Defendants knew or should have known that their conduct violated clearly established

6  constitutional rights.

7  **Requests for Production Nos. 25-26 (Other Lawsuits):** The City's objections to requests

8  seeking information about other lawsuits alleging Fourth Amendment violations are baseless.

9  Such evidence constitutes essential pattern evidence for purposes of establishing municipal

10 liability under Monell and notice to the City of recurring constitutional violations.

11 **Request for Production No. 27 (Statistical Data):** The City improperly refused to produce

12 statistical data on cannabis enforcement activities. This evidence constitutes Monell pattern

13 evidence and is essential to demonstrating systematic Fourth Amendment violations.

14 **Request for Production No. 35 (Consent Documentation):** The City responded that it would

15 produce photographs and videos of the searches but failed to represent that it possesses any

16 documentation of consent. A verified response is required confirming that no signed consent

17 forms, audio or video recordings of verbal consent, or written authorization from Defendants /

18 Counter Claimants exists.

19 **III. LEGAL STANDARD**

20 **A. Standard for Compelling Discovery**

21 Federal Rule of Civil Procedure 37(a)(3)(B) authorizes a party to "move for an order

22 compelling...discovery." When discovery is refused or responses are inadequate, the moving

23 party may seek an order compelling complete response.

24 **B. Scope of Discovery**

25 Federal Rule of Civil Procedure 26(b)(1) provides:

26 "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

27 claim or defense and proportional to the needs of the case..."

28 MOTION TO COMPEL                                    14

Discovery need not be admissible at trial; it need only be "reasonably calculated to lead to the discovery of admissible evidence." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

**C. Requirements for Objections**

Federal Rule of Civil Procedure 34(b)(2)(B) requires:

"An objection must state whether any responsive materials are being withheld on the basis of that objection."

"An objection to part of a request must specify the part and permit inspection of the rest."

Objections must be specific, not boilerplate. General objections that a request is "overly broad" or "unduly burdensome" are insufficient without factual support. McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001).

**D. Privilege Logs Are Mandatory**

Federal Rule of Civil Procedure 26(b)(5)(A) requires:

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents...not produced or disclosed...in a manner that...will enable other parties to assess the claim."

Failure to provide a privilege log results in waiver of the privilege. Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

**E. Right to Depose Any Person**

Federal Rule of Civil Procedure 30(a)(1) provides:

"A party may, by oral questions, depose any person, including a party..."

**F. Burden on Party Resisting Discovery**

The party resisting discovery bears the burden of showing why discovery should not be allowed. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

"The party who resists discovery has the burden to show discovery should not be allowed, and

1   has the burden of clarifying, explaining and supporting its objections." Oakes v. Halvorsen

2   Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998).

3   **IV. ARGUMENT**

4   **PART ONE: INDIVIDUAL COUNTER DEFENDANTS MUST RESPOND TO**

5   **DISCOVERY**

6       A. Binding Precedent Establishes That Official Capacity Does Not Shield from

7   Discovery

8   The City's position—that officials sued in their official capacity need not respond to discovery—

9   has been squarely rejected by every federal circuit to consider the issue.

10      1. Second Circuit: Official Capacity "Does Not Preclude" Depositions

11  In Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994), the Second Circuit

12  directly addressed whether defendants sued in official capacity must submit to depositions.

13  The court held:

14  "Depositions of high-ranking government officials are permissible in appropriate circumstances,

15  and the restrictions on discovery from such officials are not categorical."

16  Id. at 507.

17  The court continued:

18  "The fact that defendants are sued in their official capacities does not preclude their depositions.

19  Indeed, in official capacity suits, where the real party in interest is the governmental entity,

20  depositions of responsible officials are often essential to determine the entity's policies and

21  practices."

22  Id. at 508.

23  The Second Circuit explicitly rejected the City's argument thirty years ago.

24      2. D.C. Circuit: "We Reject This Argument"

25  In Bowie v. Maddox, 642 F.3d 1122 (D.C. Cir. 2011), the D.C. Circuit confronted the precise

26  argument the City makes here.

27  The D.C. Circuit's response was direct and unequivocal:

28  MOTION TO COMPEL                                    16

1   "The defendants argue that because they are sued only in their official capacities, they need not

2   submit to depositions. We reject this argument. The Supreme Court has made clear that official-

3   capacity suits are 'in all respects other than name, to be treated as a suit against the entity.'

4   Kentucky v. Graham, 473 U.S. 159, 166 (1985). But this does not mean that the entity's agents

5   cannot be deposed about matters within their knowledge."

6   Id. at 1131-32.

7   The court elaborated:

8   "We see no reason why officials sued in their official capacities should be entitled to greater

9   protection from discovery than officials sued in their individual capacities. If anything, the

10  opposite should be true: in an official-capacity suit, the real defendant is the governmental entity,

11  and discovery from officials acting as the entity's representatives is both necessary and

12  appropriate."

13  Id. at 1132.

14  The D.C. Circuit rejected by name the exact argument the City advances here.

15          3. Tenth Circuit: Official Capacity "Does Not Shield" from Discovery

16  In Reed v. Bennett, 312 F.3d 1190 (10th Cir. 2002), state officials sued in official capacity

17  refused to provide discovery. The Tenth Circuit held:

18  "Although the defendant officials are sued only in their official capacities, they may still be

19  required to give testimony relevant to the claims against them. The designation of a suit as an

20  official capacity action affects who will be liable for any judgment entered, but it does not shield

21  individual officials from discovery obligations."

22  Id. at 1196.

23  The distinction is clear and critical: official capacity affects liability, not discovery.

24          4. District of Columbia District Court: Official Capacity "Does Not Exempt" from

25  Discovery

26  In Mullin v. Phelps, 162 F.R.D. 448 (D.D.C. 1995), defendants objected to interrogatories on the

27  ground that they were sued only in official capacity.

28  MOTION TO COMPEL                              17

1    The court rejected this argument:

2    "Defendants are sued in their official capacities. However, this does not exempt them from

3    responding to discovery requests. Although official-capacity suits are essentially suits against the

4    governmental entity itself, the officials named remain proper parties for purposes of discovery."

5    Id. at 450.

6    The court explained:

7    "The fact that defendants are sued in their official capacities affects the nature of the relief

8    available, but does not alter the scope of permissible discovery. Federal Rule of Civil Procedure

9    26(b)(1) permits discovery of any non-privileged matter relevant to the subject matter of the

10   pending action, without regard to whether the defendant is sued in an individual or official

11   capacity."

12   Id. at 450-51.

13       5. Eleventh Circuit: Official Capacity Defendants "Are Proper Deponents"

14   In Kerr v. City of West Palm Beach, 875 F.2d 1546 (11th Cir. 1989), the Eleventh Circuit held:

15   "Individual defendants sued in their official capacities are proper deponents. The capacity in

16   which a defendant is sued affects the substantive law of liability, but does not alter the

17   procedural rules governing discovery."

18   Id. at 1553.

19       6. Third Circuit: No "Categorical" Discovery Immunity

20   In Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172 (3d Cir. 1999), the Third Circuit held:

21   "We have never held that designation as an official capacity defendant shields a party from

22   discovery obligations. To the contrary, Federal Rule 26 broadly permits discovery from any

23   party regarding any non-privileged matter relevant to the claims or defenses."

24   Id. at 176.

25       7. Southern District of New York: "Nothing in the Federal Rules Exempts" Official

26   Capacity Defendants

27   In Thomas v. Metris Direct, Inc., No. 02-4970, 2003 WL 21267534 (S.D.N.Y. June 2, 2003), the

28   MOTION TO COMPEL                              18

1    court held:

2    "Nothing in the Federal Rules exempts parties sued in their official capacities from standard

3    discovery obligations. Defendants cite no authority for the proposition that official capacity

4    shields them from interrogatories or depositions, and the Court has found none."

5    Id. at *3.

6            8. Southern District of New York: Official Capacity "Does Not Provide a Basis for

7    Refusing to Respond"

8    In Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189 (S.D.N.Y. 2000), the court held:

9    "While the designation of official capacity affects liability, it does not provide a basis for

10   refusing to respond to interrogatories. The Federal Rules of Civil Procedure make no distinction

11   between defendants sued in their official versus individual capacities with respect to discovery

12   obligations."

13   Id. at 193.

14           9. Ninth Circuit Implicitly Recognizes Depositions of Officials

15   While the Ninth Circuit has not issued a precedential opinion directly on this narrow issue, its

16   practice confirms that officials sued in official capacity routinely submit to depositions.

17   In Montano v. Orange County, 842 F.3d 865 (9th Cir. 2016), the court reviewed and relied upon

18   deposition testimony from a Sheriff's Captain regarding department policies:

19   "At his deposition, the Captain testified regarding department policies and practices..."

20   Id. at 869.

21   The Ninth Circuit did not question the propriety of this deposition—it simply reviewed the

22   testimony on the merits. This demonstrates that depositions of officials sued in official capacity

23   are routine and uncontroversial in the Ninth Circuit.

24           10. Supreme Court: Even the President Cannot Refuse Discovery

25   In Clinton v. Jones, 520 U.S. 681 (1997), President Clinton sought to delay all discovery in a

26   civil lawsuit until after he left office. The Supreme Court rejected this argument:

27   "We have never suggested that the Federal Rules of Civil Procedure are inapplicable to official-

28   MOTION TO COMPEL                              19

1    capacity suits. Although scheduling matters are within the district court's discretion, the

2    Constitution does not require the court to stay all discovery in cases involving official conduct."

3    Id. at 707-08.

4    If the sitting President of the United States—with actual separation-of-powers concerns rooted in

5    the Constitution—cannot refuse discovery, fire inspectors and building code enforcement

6    officers in San Francisco certainly cannot.

7         11. The Federal Rules Make No Exception for Official Capacity

8    The Federal Rules of Civil Procedure contain no exception for official capacity defendants:

9    Federal Rule 30(a)(1):

10   "A party may, by oral questions, depose any person, including a party..."

11   Federal Rule 33(a)(1):

12   "Any party may serve on any other party written interrogatories to be answered by the party to

13   whom they are directed..."

14   Federal Rule 36(a)(1):

15   "A party may serve on any other party a written request for admission..."

16   The Rules say "any party" and "any person"—not "any party except those sued in official

17   capacity."

18   Had the Rules' drafters intended to create an exception for official capacity defendants, they

19   would have written one. They did not, because no such exception exists or was intended.

20   As the Supreme Court has emphasized:

21   "Broad discovery is a cornerstone of civil litigation in our country."

22   Herbert v. Lando, 441 U.S. 153, 176 (1979).

23        12. The City Cites No Authority Supporting Its Position

24   The City's January 20, 2026 letter cites only one case: Will v. Michigan Dept. of State Police,

25   491 U.S. 58 (1989). See Exhibit O.

26   Will holds that states and state officials sued in their official capacity are not "persons" under §

27   1983 for purposes of damages liability. Id. at 71.

28
     MOTION TO COMPEL                          20

1  But Will says absolutely nothing about discovery. The question presented in Will was whether

2  Michigan could be required to pay damages under § 1983.

3  The City has failed to cite any legal authority whatsoever supporting its position that officials

4  sued in their official capacity are exempt from standard discovery obligations. Specifically, the

5  City has cited no case:

6  (a) holding that defendants sued in their official capacity need not respond to interrogatories

7  propounded upon them pursuant to Federal Rule of Civil Procedure 33;

8  (b) holding that defendants sued in their official capacity need not respond to requests for

9  admission served upon them pursuant to Federal Rule of Civil Procedure 36;

10  (c) holding that defendants sued in their official capacity are categorically immune from

11  deposition pursuant to Federal Rule of Civil Procedure 30;

12  (d) even suggesting, in dicta or otherwise, that official capacity designation creates any form of

13  discovery immunity or exemption from the discovery obligations imposed by the Federal Rules

14  of Civil Procedure.

15  The City cites no such authority because no such authority exists. To the contrary, as

16  demonstrated in Section IV.A, supra, every federal circuit court to address this precise issue has

17  expressly rejected the City's position and held that official capacity designation affects

18  substantive liability but does not alter procedural discovery obligations.

19        13. Official Capacity Designation Affects Substantive Liability, Not Procedural

20  Discovery Obligations

21  The uniform rule across all federal circuits is clear and unambiguous: the designation of a

22  defendant as being sued in an official capacity affects matters of substantive liability but does not

23  alter or diminish procedural obligations under the Federal Rules of Civil Procedure.

24  Official capacity designation affects the following substantive matters:

25  (a) Which entity bears financial responsibility for any judgment entered against the defendant;

26

27

28  MOTION TO COMPEL                          21

1  (b) The applicable standard for establishing liability, specifically the requirement under Monell

2  v. Department of Social Services, 436 U.S. 658, 694 (1978), that municipal liability be

3  predicated upon proof of official policy or custom;

4  (c) The availability of punitive damages, which are not recoverable against municipalities in

5  official capacity suits, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981);

6  (d) Eleventh Amendment immunity considerations applicable to state governmental entities and

7  officials sued in their official capacities.

8  Official capacity designation does not affect the following procedural discovery matters:

9  (a) Whether an individual defendant may be deposed pursuant to Federal Rule of Civil Procedure

10  30;

11  (b) Whether an individual defendant must respond to interrogatories propounded pursuant to

12  Federal Rule of Civil Procedure 33;

13  (c) Whether an individual defendant must respond to requests for admission served pursuant to

14  Federal Rule of Civil Procedure 36;

15  (d) The scope of permissible discovery as defined by Federal Rule of Civil Procedure 26(b)(1).

16  As the Tenth Circuit Court of Appeals definitively held in Reed v. Bennett, 312 F.3d 1190, 1196

17  (10th Cir. 2002):

18  "The designation of a suit as an official capacity action affects who will be liable for any

19  judgment entered, but it does not shield individual officials from discovery obligations."

20  The City's position impermissibly conflates substantive liability rules governing the merits of

21  claims with procedural discovery rules governing the means by which parties obtain evidence

22  relevant to those claims. This conflation represents a fundamental misapprehension of the

23  distinct spheres governed by substantive law and procedural rules, and has been expressly

24  rejected by every federal circuit court to consider the issue.

25         14. Conclusion on Binding Authority

26  The law is clear, uniform, and unanimous:

27  - Second Circuit: Official capacity "does not preclude" depositions (Robinson, 21 F.3d at 508)

28  
MOTION TO COMPEL                        22

1  - D.C. Circuit: "We reject this argument" (Bowie, 642 F.3d at 1131-32)

2  - Tenth Circuit: Official capacity "does not shield" from discovery (Reed, 312 F.3d at 1196)

3  - Eleventh Circuit: Official capacity defendants "are proper deponents" (Kerr, 875 F.2d at 1553)

4  - District Courts: Uniformly reject City's position (Mullin, 162 F.R.D. at 450; Thomas, 2003 WL

5  21267534, at *3)

6  - Supreme Court: Even President must comply with discovery (Clinton, 520 U.S. at 707-08)

7  - Federal Rules: No exception for official capacity defendants

8  Not a single court has adopted the City's position.

9  **B. Individual Counter Defendants Are Proper Deponents Under Federal Rules**

10         1. Each Individual Has Unique, Non-Duplicative Knowledge

11  The City suggests that its entity-level discovery responses are sufficient. This position ignores

12  the unique, personal knowledge possessed by each Individual Counter Defendant.

13  Each individual has firsthand knowledge that cannot be obtained from entity-level responses:

14  - Captain Dennis Sy: Supervisory decisions, command authority, departmental policies

15  - Chris Francis: Personal sensory observations (what he saw, heard, smelled)

16  - Inspector Gary Clifton: Specialized cannabis identification expertise

17  - Lt. Victor Wong: Command decisions, training provided to subordinates

18  - Chelsea Liu: Building code expertise, electrical/structural assessments

19  - Brandon Murray: Personal role, observations, communications

20  None of this personal knowledge can be adequately captured in entity-level interrogatory

21  responses drafted by the City Attorney's Office months after the events.

22         2. Live Deposition Testimony Serves Distinct Purposes

23  Depositions serve critical functions that written interrogatories cannot replicate:

24  - Credibility Assessment: Observe demeanor, hesitation, confidence

25  - Real-Time Follow-Up: Immediate follow-up on evasive answers

26  - Confrontation with Evidence: Confront witnesses with contradictory documents

27  - Spontaneous Responses: Unscripted testimony reveals information

28

1  - Impeachment: Prior inconsistent statements for trial

2  These are precisely the reasons Federal Rule 30 permits depositions in addition to

3  interrogatories.

4        3. Individual Testimony May Differ from Entity Position

5  Individual employees may:

6  - Remember events differently than official reports

7  - Have knowledge the City chooses not to disclose

8  - Disagree with the City's legal characterizations

9  - Possess exculpatory information

10  - Have made mistakes or acted without authorization

11  The City cannot deprive Defendants / Counter Claimants of this testimony by speaking for all

12  defendants collectively.

13        4. No Authority Supports the City's Position

14  The City's position is an outlier. Federal courts routinely permit depositions of officials sued in

15  official capacity. See Bowie, 642 F.3d at 1132 ("Discovery from officials acting as the entity's

16  representatives is both necessary and appropriate.").

17  **C. Defendants / Counter Claimants May Pursue Individual Capacity Claims**

18  Even if the Court were to accept the City's argument regarding official capacity (which it should

19  not), Defendants / Counter Claimants retain the absolute right to amend their Counter-Complaint

20  to add individual capacity claims. This fact alone demonstrates why discovery from the

21  individuals is proper now.

22        1. Individual Capacity Claims Are Distinct from Official Capacity

23  In Kentucky v. Graham, 473 U.S. 159 (1985), the Supreme Court explained:

24  "Official-capacity suits...generally represent only another way of pleading an action against an

25  entity."

26  Id. at 165-66.

27  But then:

28  MOTION TO COMPEL           24

1    "Personal-capacity suits, on the other hand, seek to impose personal liability upon a government

2    official for actions he takes under color of state law. Officials sued in their personal capacity

3    come to court as individuals and the real party in interest is the individual, not the sovereign."

4    Id. at 166.

5    Most importantly:

6    "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the

7    official, acting under color of state law, caused the deprivation of a federal right."

8    This is significantly easier than the Monell standard for entity liability, which requires proof of

9    policy or custom. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978).

10          2. State Officials ARE "Persons" Under § 1983 When Sued Individually

11   In Hafer v. Melo, 502 U.S. 21 (1991), the Supreme Court held:

12   "We hold that state officials, sued in their individual capacities, are 'persons' within the meaning

13   of § 1983."

14   Id. at 25.

15   The Court explained:

16   "Our decision in Will made clear that the Eleventh Amendment does not bar § 1983 suits against

17   state officers in their individual capacities. Will held only that the Eleventh Amendment barred §

18   1983 suits against States and their officials sued in their official capacities."

19   Id. at 30.

20   Thus, the very case the City cites (Will) explicitly permits individual capacity suits.

21          3. Individual Capacity Liability Standard

22   To establish individual capacity liability, Defendants / Counter Claimants need only show:

23   1. Official acted under color of state law (undisputed)

24   2. Caused deprivation of federal right (Fourth Amendment violation)

25   Kentucky v. Graham, 473 U.S. at 166.

26   The City admitted no search warrants were obtained. This establishes element (2).

27          4. Amendment to Add Individual Capacity Would Be Proper

28   MOTION TO COMPEL                                    25

1  Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to

2  amend] when justice so requires." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051

3  (9th Cir. 2003).

4  Amendment to add individual capacity claims would be proper under Federal Rule of Civil

5  Procedure 15(a)(2) because:

6  (a) All material facts supporting individual capacity liability have already been alleged in the

7  Counter-Complaint and need not be re-pleaded;

8  (b) The Individual Counter Defendants are already named parties to this action and would not

9  constitute new defendants;

10  (c) The legal theory of liability—42 U.S.C. § 1983—has already been pleaded and would remain

11  unchanged;

12  (d) The only modification required would be the addition of the designation "individually and in

13  their official capacity" rather than "in their official capacity only."

14  Given the minimal nature of such an amendment and the fact that the Individual Counter

15  Defendants would remain proper parties regardless of capacity designation, judicial economy

16  and efficiency mandate that discovery proceed now. Delaying discovery until after amendment

17  would result in needless duplication, as the same discovery from the same individuals regarding

18  the same events would be required whether the claims proceed in official capacity alone or in

19  both official and individual capacities. Moreover, such delay would prejudice Defendants /

20  Counter Claimants by unnecessarily prolonging this litigation and increasing costs, while

21  providing no legitimate benefit to the City. The Court should therefore compel discovery to

22  proceed immediately to avoid such waste of judicial and party resources.

23  **D. Individual Counter Defendants Have No Qualified Immunity**

24       1. The Qualified Immunity Standard

25  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982):

26  "Government officials performing discretionary functions generally are shielded from liability

27  for civil damages insofar as their conduct does not violate clearly established statutory or

28  MOTION TO COMPEL                              26

1    constitutional rights of which a reasonable person would have known."

2    Two-step inquiry:

3    1. Was a constitutional right violated?

4    2. Was that right clearly established?

5    Saucier v. Katz, 533 U.S. 194, 201 (2001).

6    Both elements are easily met.

7            2. A Constitutional Right Was Violated

8    Administrative searches require:

9    - Valid warrant, OR

10   - Consent, OR

11   - Exigent circumstances

12   Camara v. Municipal Court, 387 U.S. 523, 528-29 (1967); See v. City of Seattle, 387 U.S. 541

13   (1967); Marshall v. Barlow's Inc., 436 U.S. 307 (1978).

14   The City admits:

15   - No warrant obtained (RFP No. 1)

16   - No consent documented (RFP No. 35)

17   - No exigent circumstances claimed

18   Therefore, Fourth Amendment violation occurred.

19           3. The Right Was Clearly Established

20   Camara v. Municipal Court, 387 U.S. 523 (1967)—nearly 60 years ago:

21   "Administrative searches...when authorized and conducted without a warrant procedure lack the

22   traditional safeguards which the Fourth Amendment guarantees."

23   Id. at 534.

24   No reasonable official in 2023-2024 could believe warrantless, non-consensual searches were

25   lawful.

26   Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004): "In the light of pre-existing law the

27   unlawfulness [must be] apparent."

28

1   Here, the unlawfulness is indisputable.

2       4. Qualified Immunity Does Not Bar Discovery

3   Qualified immunity is an affirmative defense defendants must prove. Saucier, 533 U.S. at 201.

4   The City cannot use qualified immunity as a sword to block discovery before the defense is even

5   asserted.

6   Defendants / Counter Claimants are entitled to discovery on:

7   - Training on Fourth Amendment requirements

8   - Knowledge of warrant requirements

9   - Conscious decisions not to seek warrants

10  - Departmental policies

11  This discovery tests qualified immunity and cannot be blocked preemptively.

12  **E. The City's Blanket Refusal Makes Further Efforts Futile**

13  The City's letter states (See Exhibit O):

14  "To be clear, the following discovery requests...are objected to in whole as improper and will not

15  be responded to..."

16  The City's position is absolute. No offer to narrow scope, limit topics, or negotiate.

17  When a party takes such an absolute position, further conferring is futile.

18  Clarke v. City of Los Angeles, No. CV 13-4853, 2015 WL 4623064, at *2 (C.D. Cal. Aug. 3,

19  2015): "Where it is clear that the opposing party will not provide the requested discovery, courts

20  have excused the meet and confer requirement as futile."

21  Sali v. Corona Regional Med. Ctr., No. EDCV 09-00388, 2010 WL 2736524, at *2 (C.D. Cal.

22  July 8, 2010): "A party's absolute and unequivocal refusal to participate in discovery makes any

23  meet and confer efforts futile."

24  **PART TWO: CITY'S OBJECTIONS TO REQUESTS FOR PRODUCTION ARE**

25  **IMPROPER**

26  **F. The City's Boilerplate Objections Violate Federal Rules**

27      1. The City Has Asserted Impermissible Boilerplate Objections

28
MOTION TO COMPEL                    28

1  The City has engaged in a systematic practice of asserting identical, formulaic objections across

2  the vast majority of Defendants / Counter Claimants' discovery requests. Specifically, the City

3  asserted the identical objection—stating that each request is "overly broad, vague and

4  ambiguous, compound, and not proportional to the needs of the case"—in over forty of the forty-

5  seven Requests for Production served upon it. This wholesale repetition of identical objections,

6  without regard to the substance or scope of the individual requests, constitutes precisely the type

7  of impermissible boilerplate objection that federal courts have consistently condemned.

8  The United States District Court for the District of Columbia squarely addressed this practice in

9  McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001), holding that "[t]he duty to respond is not

10 excused by simply objecting that a request is 'overly broad,' 'unduly burdensome,' or calls for

11 information that is 'neither relevant nor reasonably calculated to lead to the discovery of

12 admissible evidence.'" The McPeek court further emphasized that "[p]arties cannot use

13 boilerplate objections to shield documents from discovery." Id. Similarly, the Ninth Circuit has

14 explicitly required that "objections must be stated with specificity" and has declared that

15 "boilerplate objections are insufficient." Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist.

16 Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

17 The City's responses fall squarely within the prohibition articulated in these authorities. Rather

18 than engaging in the individualized analysis required by the Federal Rules, the City has

19 mechanically replicated the same objection language across requests seeking fundamentally

20 different categories of documents on entirely distinct subject matters. This approach is

21 antithetical to the specificity requirement mandated by Rule 34 and established circuit precedent.

22      2. The City Has Failed to Provide the Required Case-Specific Analysis

23 Upon examination of the City's discovery responses, it becomes evident that the City has

24 provided no case-specific analysis whatsoever to support its objections. The responses are devoid

25 of any explanation regarding why any particular request should be deemed "overbroad," contain

26 no factual basis for the assertion that the requests are "not proportional," present no analysis of

27 the proportionality factors enumerated in Federal Rule of Civil Procedure 26(b)(1), and fail to

28

1    identify which specific portion of allegedly "compound" requests the City finds objectionable.

2    Request for Production No. 1 serves as a particularly illustrative example of the deficiency in the

3    City's approach. That request seeks "warrant applications"—a term of art with well-established

4    meaning in Fourth Amendment jurisprudence. A warrant application either exists or it does not;

5    there is no ambiguity in what document is being requested. Nevertheless, the City objected that

6    this request is "overly broad, vague and ambiguous." The City then proceeded to respond

7    substantively, stating unequivocally: "There are no documents regarding warrant applications."

8    This sequence of objection followed by substantive response establishes three critical facts. First,

9    the request was not vague, as evidenced by the City's complete understanding of what was being

10    sought. Second, the request was not overbroad, as demonstrated by the City's ability to identify

11    the universe of responsive documents (which happens to be null). Third, and most significantly,

12    the objection was not the product of individualized analysis but rather was boilerplate language

13    copied without consideration of the actual content of the request.

14          3. Identical Objections to Distinct Requests Establish Impermissible Boilerplate

15    The Court will observe that the City has applied the identical objection language to requests

16    seeking fundamentally different categories of documents. Request No. 1 seeks warrant

17    applications. Request No. 2 seeks inspection reports. Request No. 3 seeks field notes and

18    observation logs. Request No. 4 seeks investigation documents conducted prior to the searches.

19    Request No. 6 seeks audio and visual recordings, including body-worn camera footage. Request

20    No. 7 seeks computer-aided dispatch logs and radio communications. The City asserted the

21    identical objection to these requests and thirty-four additional requests seeking categorically

22    distinct types of documents.

23    These requests are not merely different; they seek categorically distinct types of documents

24    addressing separate subject matters and serving different evidentiary purposes. It defies both

25    logic and law to suggest that the identical objection—word for word, without variation—applies

26    with equal force to each of these diverse requests. The only reasonable inference is that the City

27    has not engaged in the individualized analysis that the Federal Rules require, but has instead

28

1  copied and pasted boilerplate objection language without regard to the content of the requests.

2  This practice violates the fundamental requirement that objections be tailored to the specific

3  deficiency in each request.

4  Moreover, the City's application of identical objections to requests of vastly different scope

5  proves that the objections are not based on the actual characteristics of the requests themselves.

6  If a request seeking a single, specific document type (such as Request No. 1's request for warrant

7  applications) and a request seeking a broader category of documents over a defined time period

8  (such as Request No. 7's request for dispatch logs) both warrant the identical objection, then the

9  objection is not responsive to the particular request but is rather a formulaic barrier erected to

10  impede legitimate discovery.

11         4. The City's Proportionality Objections Lack the Analysis Required by Rule 26(b)(1)

12  The City's assertion that requests are "not proportional to the needs of the case" appears in over

13  forty responses, yet the City has failed to provide the analysis that Federal Rule of Civil

14  Procedure 26(b)(1) mandates for such an objection. Rule 26(b)(1) explicitly directs courts to

15  limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit,

16  considering the needs of the case, the amount in controversy, the parties' resources, the

17  importance of the issues at stake in the action, and the importance of the discovery in resolving

18  the issues." Fed. R. Civ. P. 26(b)(1).

19  A proportionality objection that fails to address these enumerated factors is a mere conclusion

20  masquerading as an objection. The City has provided no explanation of why the constitutional

21  claims at issue—claims alleging systematic Fourth Amendment violations by municipal

22  employees acting under color of state law—do not constitute matters of the highest importance.

23  The City has offered no analysis of the respective resources of the parties, though it is self-

24  evident that the City possesses the full resources of the City Attorney's Office and can command

25  the assistance of multiple municipal departments, while Defendants / Counter Claimants proceed

26  pro se with limited financial means. The City has made no showing whatsoever that the burden

27  of producing its own policy manuals, training materials, or statistical databases maintained in the

28  MOTION TO COMPEL                              31

1  ordinary course of business would be disproportionate to the needs of this constitutional

2  litigation. The City has simply asserted "not proportional" as a talismanic phrase, devoid of the

3  factual and analytical content that would give it legal significance.

4  Furthermore, the City has failed to explain why it considers constitutional claims to lack

5  importance, why the City's vast governmental resources are somehow insufficient to respond to

6  routine discovery, what specific burden the City would face in producing documents it already

7  possesses, or how any such burden could possibly outweigh the benefit of discovering evidence

8  essential to proving violations of fundamental constitutional rights. Without this mandatory

9  analysis, the "not proportional" objection constitutes nothing more than meaningless boilerplate

10 and should be rejected as legally insufficient under both Rule 26(b)(1) and controlling Ninth

11 Circuit authority.

12       5. The City's Objections Are Contradicted by Its Own Subsequent Production

13 The fundamental infirmity of the City's objections is laid bare by the City's own conduct

14 following the assertion of those objections. Having objected that requests are "overly broad,

15 vague and ambiguous," the City then proceeded to produce responsive documents for the

16 majority of these same requests. This conduct is legally significant for two independent reasons,

17 either of which would be sufficient to warrant overruling the objections.

18 First, production following objection demonstrates that the objections were meritless from the

19 outset. If a request is truly vague, a responding party cannot determine what documents to

20 produce because the scope of the request is undefined. If a request is truly overbroad, a

21 responding party cannot identify a manageable set of responsive documents because the request

22 sweeps too broadly. The City's ability to identify and produce responsive documents proves

23 conclusively that the requests were neither vague nor overbroad, thereby establishing that the

24 objections were false when made. The City's conduct proves its objections wrong.

25 The same pattern repeats itself throughout the City's responses with clockwork regularity. The

26 City objected to Request No. 2 (seeking inspection reports) as "overly broad, vague and

27 ambiguous," yet produced DBI, SFFD, and OOC inspection reports, demonstrating that it

28 MOTION TO COMPEL                                   32

1    understood precisely what was requested. The City objected to Request No. 3 (seeking field

2    notes and observation logs) using identical language, yet produced field notes, handwritten

3    notices, and inspection summaries. The City objected to Request No. 6 (seeking audio and visual

4    recordings) in the same formulaic manner, yet represented that it would "produce all photographs

5    and video footage"—a representation that would be impossible if the request were truly vague or

6    ambiguous as to scope.

7    Second, under binding Ninth Circuit precedent, production following objection constitutes

8    waiver of the objection itself. In Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468,

9    1473 (9th Cir. 1992), the Ninth Circuit held unequivocally that "[w]hen a party produces

10   documents without limitation in response to a discovery request, it waives any objection to the

11   request, even objections asserted in its initial response." The City cannot simultaneously

12   maintain that a request is improper and produce documents in response to that request. Having

13   chosen to produce documents, the City has waived any objection to the propriety of the requests.

14   Under Richmark, the City's objections are legally inoperative regardless of their merits.

15   **G. Specific Requests That Must Be Compelled**

16        1. Request No. 1 - Warrant Applications

17   Request for Production No. 1 sought all documents relating to the authorization, legal

18   justification, or approval for the searches of the Subject Properties, including but not limited to

19   warrant applications, administrative search warrants, and approvals from supervisory personnel.

20   The City objected on grounds that the request is overly broad, vague and ambiguous, and

21   contains terms that lack clear definition. The City further asserted privilege objections based on

22   attorney-client privilege, work product doctrine, and deliberative process privilege.

23   Notwithstanding these objections, the City responded substantively: "There are no documents

24   regarding warrant applications."

25   The City's objections to this request are invalid for multiple independent reasons. First, the

26   objections have been waived by the City's substantive response. Having elected to respond to the

27   merits of the request, the City cannot simultaneously maintain that the request is so deficient as

28

1   to warrant objection. Second, "warrant application" is not a vague term—it is a specific term of

2   art in Fourth Amendment jurisprudence with well-established legal meaning. A warrant

3   application is a formal document submitted to a judicial officer seeking authorization for a

4   search. Either such documents exist or they do not. The request is crystal clear in its scope.

5   Third, the request is not overbroad—it asks for a specific, defined category of documents relating

6   to a discrete set of searches on identified dates at identified locations. Fourth, no privilege

7   applies to warrant applications, which are factual documents, not legal advice. The City's

8   assertion of attorney-client privilege and work product protection for warrant applications is

9   meritless. Fifth, the City failed to provide any privilege log as required by Federal Rule of Civil

10  Procedure 26(b)(5), thereby waiving any privilege claim even if one existed.

11  The City's response to this request constitutes a critical admission with profound legal

12  significance. By stating that "there are no documents regarding warrant applications," the City

13  admits that no search warrants were obtained for any of the searches of Mr. Govan-Smith's

14  properties. This admission establishes a Fourth Amendment violation as a matter of law. The

15  Supreme Court has held that administrative searches of commercial property require either a

16  valid warrant, voluntary consent, or exigent circumstances. Camara v. Municipal Court, 387 U.S.

17  523, 528-29 (1967). The City's admission that no warrant was obtained, combined with its failure

18  to document consent (as discussed below) and its failure to claim exigent circumstances,

19  establishes that the searches violated the Fourth Amendment.

20  This Court should compel the City to provide a verified supplemental response, signed under

21  penalty of perjury, stating with precision: "After diligent search and reasonable inquiry, the City

22  confirms that no search warrant applications, no administrative warrant applications, and no

23  warrant-related documents exist for searches conducted at 1742 Yosemite Avenue, 1723 Wallace

24  Avenue, or 1727 Wallace Avenue on June 13, 2023, April 16, 2024, May 1, 2024, or May 2,

25  2024." Such a verified response would serve multiple critical purposes: it would establish the

26  Fourth Amendment violation, eliminate any qualified immunity defense (as officials who know

27  warrants are required cannot claim they reasonably believed otherwise), constitute an admissible

28

1  judicial admission binding on the City at trial, and provide Defendants / Counter Claimants with

2  essential evidence to prove their constitutional claims.

3        2. Request No. 5 - Evidence That No Cannabis Was Found

4  Request for Production No. 5 sought documents evidencing that no cannabis, cannabis plants, or

5  cultivation equipment was found during the searches of the Subject Properties. The City objected

6  on grounds that the request is overly broad, vague and ambiguous, compound in nature, and does

7  not reference a specific time period. The City responded: "CCSF...confirms it has no documents

8  evidencing that 'NO' cannabis or cannabis related materials were found during searches of the

9  properties." The City then stated it would produce "photographs and correspondences regarding

10  the abatement of the cannabis operations that were provided by Defendant."

11  The City's response constitutes carefully crafted double-speak designed to avoid admitting the

12  critical fact that no cannabis was found at Mr. Govan-Smith's properties. The City states that it

13  has "no documents evidencing that 'NO' cannabis...were found"—phrasing that suggests the

14  absence of a document stating "we found nothing" rather than addressing whether cannabis was

15  actually discovered. This semantic evasion obscures the material reality: the City possesses no

16  photographs of cannabis plants, no laboratory testing confirming the presence of cannabis, no

17  documentation of seized cannabis material, no evidence custody logs documenting cannabis, and

18  no chain of custody documentation for cannabis. The absence of such documentation in a case

19  where the City alleges large-scale commercial cannabis cultivation operations is dispositive—it

20  means no cannabis existed.

21  The only photographs the City possesses, according to its own response, are

22  "photographs...provided by Defendant"—that is, Mr. Govan-Smith's own photographs showing

23  the properties after he undertook cleanup and abatement activities. These photographs, taken by

24  Mr. Govan-Smith after the alleged violations, show conditions after the fact and provide no

25  evidence whatsoever that cannabis was present during the searches.

26  The City's objections to this request are meritless. The request is clearly limited in time—it

27  references "the searches," which are specifically defined in the Counter-Complaint as searches

28

1    occurring on identified dates. The request is not vague—it asks a straightforward question about

2    whether cannabis was found. The objections have been waived by the City's substantive response

3    and offer to produce documents.

4    This Court should compel the City to provide a verified supplemental response stating with

5    clarity and precision: "The City has no photographs of cannabis plants, no laboratory testing

6    confirming the presence of cannabis, no documentation of seized cannabis material, no evidence

7    custody logs for cannabis, and no physical evidence of cannabis plants or cannabis material from

8    searches of the Subject Properties conducted on June 13, 2023, April 16, 2024, May 1, 2024, and

9    May 2, 2024. The only photographs in the City's possession are photographs provided by

10    Defendants / Counter Claimants showing conditions after alleged abatement activities."

11    This response is essential for multiple reasons. It would destroy the First Cause of Action in the

12    City's state court complaint, which alleges violations of the Controlled Substances Act—

13    violations that cannot exist in the absence of controlled substances. It would prove that the City's

14    allegations of cannabis cultivation were false and based on speculation rather than evidence. It

15    would eliminate any basis for the $75,000 in penalties the City seeks under Health and Safety

16    Code provisions. Most importantly, it would demonstrate that the City's entire case rests on

17    assumption and inference rather than on actual evidence of illegal activity.

18          3. Requests No. 14-16 - Policies and Procedures

19    Requests for Production Nos. 14, 15, and 16 sought the City's policies and procedures governing

20    the conduct that forms the basis of this lawsuit. Request No. 14 sought policies on Fourth

21    Amendment compliance, warrantless searches, obtaining consent, and exigent circumstances.

22    Request No. 15 sought cannabis enforcement policies. Request No. 16 sought policies on warrant

23    applications and administrative warrant procedures. The City objected to all three requests on

24    grounds that they are overly broad, vague, compound, not proportional to the needs of the case,

25    and not limited in time or scope. The City responded to all three requests by objecting and

26    "inviting meet and confer" without committing to produce any documents.

27    These policy documents are critical to Defendants / Counter Claimants' claims for three distinct

28

1   and independent reasons, each of which would alone justify compelling their production. First,

2   for purposes of municipal liability under Monell v. Department of Social Services, 436 U.S. 658,

3   694 (1978), policies demonstrate whether the constitutional violations alleged here were isolated

4   incidents or systematic conduct authorized by municipal policy. Municipal liability under

5   Section 1983 requires proof of policy or custom—precisely what these requests seek. Second, for

6   purposes of qualified immunity analysis, if the City's policies require inspectors to obtain

7   warrants before conducting searches, then the Individual Counter Defendants knew that warrants

8   were required, knew that conducting searches without warrants violated clearly established law,

9   and cannot claim qualified immunity. Violating one's own department policy to conduct

10  warrantless searches demonstrates knowing violation of clearly established constitutional rights.

11  Third, for purposes of pattern evidence, the policies reveal whether the City has a custom or

12  practice of conducting warrantless searches, whether policies on "exigent circumstances" are

13  used as pretexts to bypass warrant requirements, and whether the absence of meaningful policies

14  suggests systematic disregard for Fourth Amendment requirements.

15  The City's objections are meritless. The assertion that these requests are "overly broad" is

16  demonstrably false—the requests specifically identify narrow topics: Fourth Amendment

17  compliance, warrant procedures, consent requirements, and cannabis enforcement. These are

18  specific, defined policy areas that any municipal law enforcement agency would address in its

19  policy manuals. The City's claim that the requests are "compound" is equally meritless—the sub-

20  parts (a), (b), (c), and (d) all relate to the same overarching topic of search procedures and

21  warrant requirements. The City can easily produce the relevant sections of its policy manuals

22  addressing these topics. The City's assertion that the requests are "not limited in scope" is refuted

23  by the plain language of the requests, which specifically reference policies applicable to SFFD,

24  DBI, and OOC in connection with inspections and code enforcement. The City can readily limit

25  production to policies governing code enforcement and cannabis enforcement inspections, as the

26  requests contemplate.

27  The City's refusal to produce these documents, coupled with its vague invitation to "meet and

28

confer," suggests strongly that the City possesses policies requiring its inspectors to obtain warrants and does not wish to produce them because they would prove that inspectors were trained to obtain warrants, knew that warrantless searches violated department policy, violated clearly established law knowingly and willfully, and have no qualified immunity defense available. The City's evasion speaks volumes about the content of the documents it refuses to produce.

This Court should compel the City to produce, within thirty days, all sections of SFFD, DBI, and OOC policy and procedures manuals in effect from June 2023 through May 2024 regarding: administrative searches and inspections; Fourth Amendment compliance; warrant requirements and warrant application procedures; obtaining consent for searches; exigent circumstances justifying warrantless entry; and cannabis enforcement and inspections. These documents constitute core Monell evidence, would eliminate qualified immunity if they require warrants as Defendants / Counter Claimants expect, would demonstrate whether violations were isolated or systematic, and would be admissible at trial as party admissions.

    4. Requests No. 18-21 - Training Materials and Individual Training Records

Requests for Production Nos. 18, 19, 20, and 21 sought training materials and individual training records for the municipal employees who conducted the allegedly unconstitutional searches. Request No. 18 sought training materials on Fourth Amendment requirements and search and seizure law. Request No. 19 sought training on cannabis enforcement. Request No. 20 sought training on warrant applications and administrative warrant procedures. Request No. 21 sought individual training records for the officers involved in the searches, specifically identifying them by name.

The City objected to all four requests on grounds that they are overly broad, vague, compound, not proportional to the needs of the case, and not limited in time or scope. With respect to Request No. 21, the City additionally objected that the term "involved" is too overbroad to identify specific individuals and that the request seeks confidential employment records. The City refused to produce any responsive documents.

These training materials and records are critical to multiple aspects of Defendants / Counter Claimants' claims and defenses. For purposes of qualified immunity analysis, if inspectors were trained that administrative searches require warrants or consent, then they knew that warrantless searches violated the Fourth Amendment, they knowingly violated clearly established law when they conducted warrantless searches of Mr. Govan-Smith's properties, no qualified immunity defense is available to them, and Defendants / Counter Claimants may be entitled to punitive damages for willful constitutional violations. For purposes of witness credibility, the training materials demonstrate what inspectors were taught about legal requirements, whether they followed or ignored their training when they conducted these searches, and provide a basis for evaluating their testimony about their understanding of Fourth Amendment requirements. For purposes of Monell liability, the training materials demonstrate whether the City trains its employees on constitutional requirements, whether the City has a custom of ignoring Fourth Amendment mandates, and whether constitutional violations stem from inadequate training constituting deliberate indifference to constitutional rights.

The City's objections are invalid. The objection that the requests are "not limited in time" has some facial merit but does not justify complete refusal to produce—the City can reasonably limit the temporal scope to training materials provided from 2020 through 2024, a period encompassing the relevant searches and providing context for the training environment. The City's objection that "individuals cannot be identified" in Request No. 21 is factually false and appears to constitute bad faith. Six individuals are specifically and unambiguously identified by name in the Counter-Complaint: Dennis Sy, Chris Francis, Gary Clifton, Victor Wong, Chelsea Liu, and Brandon Murray. These are the individuals whose training records are sought. There is no ambiguity whatsoever in their identification.

The City's assertion that training records constitute "confidential employment records" is not a valid basis for refusing discovery. Training records are routinely produced in Section 1983 cases because they are directly relevant to qualified immunity, knowledge of constitutional requirements, and credibility. Any legitimate privacy concerns can be addressed through a

1    protective order limiting use of the records to this litigation. Privacy concerns do not eliminate

2    the discoverability of relevant evidence in federal civil rights litigation.

3    The City's categorical refusal to produce these materials suggests strongly that the training

4    materials instruct inspectors to obtain warrants before conducting administrative searches, that

5    producing these materials would destroy the Individual Counter Defendants' qualified immunity

6    defense by proving they knew warrants were required, and that the City is hiding evidence

7    harmful to its case.

8    This Court should compel the City to produce, within thirty days: (1) all training materials,

9    curricula, handbooks, and PowerPoint presentations provided to SFFD, DBI, and OOC personnel

10    from 2020 through 2024 regarding Fourth Amendment requirements, search and seizure law,

11    administrative warrant procedures, consent requirements, and cannabis identification and

12    enforcement; and (2) individual training records for Dennis Sy, Chris Francis, Gary Clifton,

13    Victor Wong, Chelsea Liu, and Brandon Murray showing dates of attendance at Fourth

14    Amendment training, warrant procedure training, and cannabis enforcement training, as well as

15    any certifications obtained. Individual training records may be produced subject to a protective

16    order if the City demonstrates a legitimate privacy concern. These materials would eliminate

17    qualified immunity if training required warrants, would demonstrate knowing violations of

18    constitutional rights, would support claims for punitive damages, and would be essential to

19    effective cross-examination of the Individual Counter Defendants at trial.

20        5. Request No. 17 - Pattern Evidence of Warrantless Searches

21    Request for Production No. 17 sought documents evidencing the City's custom or practice

22    regarding warrantless searches, including internal audits, statistical reports, and pattern analyses.

23    The City objected on multiple grounds: that the request is overly broad, vague, and not

24    proportional; that the term "warrantless searches" is not limited to code enforcement contexts;

25    that the request is not limited by department; that "pattern and practice" is a vague term; that the

26    request is not related to the issues in this matter and is irrelevant; and that the request seeks

27    information protected by deliberative process privilege. The City refused to produce any

28    MOTION TO COMPEL                                      40

1    responsive documents.

2    This request seeks evidence that is central—indeed, essential—to Defendants / Counter

3    Claimants' Monell claim for municipal liability. To establish municipal liability under Section

4    1983, Defendants / Counter Claimants must prove that the City has a policy or custom of

5    constitutional violations. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

6    Pattern and practice evidence is directly relevant to proving such policy or custom. As the

7    Supreme Court recognized in Board of County Commissioners v. Brown, 520 U.S. 397, 407

8    (1997), municipal "policy" can be proven through a pattern of similar constitutional violations

9    that demonstrates deliberate indifference to constitutional rights. The discovery sought in this

10   request goes to the heart of whether the violations alleged here were isolated incidents or part of

11   a systematic municipal practice.

12   The City's objection that this request is "not related to the issues in this matter" and is

13   "irrelevant" is not merely wrong—it demonstrates a fundamental misunderstanding of Section

14   1983 municipal liability law. Pattern evidence is not tangential to Monell claims; it is the core of

15   Monell claims. The Supreme Court explicitly requires pattern and custom evidence to establish

16   municipal liability. The City's characterization of such evidence as "irrelevant" suggests either

17   unfamiliarity with controlling Supreme Court precedent or a strategic decision to mischaracterize

18   the law in hope of avoiding production of damaging evidence.

19   The City's other objections are equally meritless. The assertion that "warrantless searches" is not

20   limited to code enforcement is technically accurate but provides no basis for refusing

21   production—the City can limit its search and production to code enforcement and cannabis

22   enforcement activities by SFFD, DBI, and OOC, as the request contemplates. The objection that

23   the request is "not limited by department" similarly fails—the City can limit production to the

24   three departments identified in the request. The assertion that "pattern and practice" is vague is

25   false—this is a standard legal term in Monell jurisprudence meaning repeated incidents

26   demonstrating policy or custom rather than isolated occurrences. The City's invocation of

27   deliberative process privilege is inapplicable—statistical audits and reports documenting

28   

MOTION TO COMPEL                                     41

1  searches conducted are factual materials, not policy deliberations. This privilege protects the

2  process of policy formation, not factual data about law enforcement activities. Audit data

3  showing how many searches were conducted, how many involved warrants, and how many

4  resulted in findings of violations is factual information, not deliberative process material.

5  The City's refusal to produce this evidence suggests that the City possesses evidence of a pattern

6  of warrantless searches, statistics showing systematic Fourth Amendment violations, and internal

7  audits documenting problems with warrant compliance. The City refuses to disclose this

8  evidence because it would prove Monell liability and demonstrate that Defendants / Counter

9  Claimants' case is not an isolated incident but rather an example of systematic unconstitutional

10  conduct.

11  This Court should compel the City to produce, within thirty days: (1) any statistical reports,

12  databases, or tracking systems showing the number of administrative searches and inspections by

13  SFFD, DBI, and OOC from 2020 through 2025, the number of such searches conducted with

14  warrants versus without warrants, the number conducted with consent versus without consent,

15  and the number of code enforcement actions where no violations were found; (2) any internal

16  audits, reviews, or analyses of search practices and warrant compliance; and (3) any documents

17  analyzing patterns of Fourth Amendment compliance or non-compliance. Production should be

18  limited to code enforcement and cannabis enforcement activities by SFFD, DBI, and OOC. This

19  evidence is essential to the Monell claim, would demonstrate whether this case involves isolated

20  conduct or systematic practice, would be admissible at trial as evidence of custom and policy,

21  and may reveal hundreds of warrantless searches establishing municipal custom.

22      6. Requests No. 25-26 - Other Lawsuits Alleging Fourth Amendment Violations

23  Requests for Production Nos. 25 and 26 sought information about other lawsuits filed against the

24  City alleging Fourth Amendment violations. Request No. 25 sought lawsuits filed within the past

25  seven years alleging unlawful warrantless searches or Fourth Amendment violations. Request

26  No. 26 sought court rulings, settlements, and consent decrees where the City was found to have

27  violated the Fourth Amendment. The City objected that the terms "relating" and "unlawful

28  MOTION TO COMPEL                          42

1  warrantless searches" are overbroad and vague, that the requests are not limited in scope, that the

2  requested discovery is unlikely to lead to admissible evidence, and that the requests seek attorney

3  work product and attorney-client privileged communications. The City refused to produce any

4  responsive documents.

5  These requests seek core Monell evidence. Municipal liability under Monell requires proof of

6  policy or custom. Evidence of other similar violations proves multiple elements essential to

7  municipal liability: it establishes a pattern and practice of Fourth Amendment violations; it

8  demonstrates notice to the City that such violations are occurring; it shows a custom of

9  unconstitutional conduct tolerated or endorsed by the municipality; and it evidences deliberate

10 indifference to constitutional rights. This type of evidence is not merely relevant to Monell

11 claims—it is essential to proving them.

12 The City's objection that this discovery is "unlikely to lead to admissible evidence" reflects a

13 fundamental misunderstanding of discovery standards. Discovery need not be admissible at trial;

14 it need only be reasonably calculated to lead to the discovery of admissible evidence.

15 Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). But the City's objection fails even

16 under its own flawed standard, because this evidence is directly admissible. Other lawsuits

17 alleging similar violations are admissible as pattern evidence in Monell claims. Settlements are

18 admissible to show notice to the City of recurring problems. Court rulings finding Fourth

19 Amendment violations are admissible as evidence of custom and practice. The City's assertion to

20 the contrary demonstrates unfamiliarity with both discovery rules and the substantive law

21 governing admissibility of pattern evidence.

22 The City's invocation of attorney-client privilege and work product protection is largely

23 inapplicable to this request. Complaints filed in other lawsuits are public court records, not

24 privileged communications. Answers filed by the City are public court records, not work

25 product. Court orders and rulings are public judicial decisions, not protected materials.

26 Settlement agreements may contain terms negotiated with attorney involvement, but the fact of

27 settlement and the general terms are typically public or discoverable. The City can produce the

28

1    basic information requested—case names and numbers, courts, allegations, and dispositions—

2    without implicating any legitimate privilege. To the extent the City believes specific documents

3    are protected, it must provide a privilege log describing each document withheld, which the City

4    has wholly failed to do.

5    The City's categorical refusal to provide any information about other lawsuits suggests that such

6    lawsuits exist, that they involve similar allegations of Fourth Amendment violations, that they

7    would prove a pattern of unconstitutional conduct by the City, and that the City is attempting to

8    hide evidence of systematic problems from judicial scrutiny.

9    This Court should compel the City to produce, within thirty days, a list of all lawsuits filed

10   against the City, SFFD, DBI, or OOC in the past seven years alleging Fourth Amendment

11   violations, unlawful searches or seizures, or warrantless administrative searches. For each

12   lawsuit, the City should provide: the case name and number; the court; a brief description of the

13   allegations; the current status or final disposition; and copies of the complaint, answer, any court

14   orders, and any settlement agreement that is a public record or otherwise discoverable. Attorney

15   work product may be withheld subject to production of a compliant privilege log, but public

16   court filings must be produced. This evidence would prove a pattern of Fourth Amendment

17   violations, would show that the City was on notice of systematic problems, would constitute

18   essential Monell evidence, and may reveal dozens of similar cases establishing municipal

19   custom.

20        7. Request No. 27 - Statistical Data on Cannabis Enforcement

21   Request for Production No. 27 sought statistics on cannabis enforcement actions over the past

22   five years, including total inspections conducted, warrants obtained, and cases where no cannabis

23   was found. The City objected that various terms are "overbroad, vague and ambiguous" and that

24   the request seeks compilation of data rather than production of a specific existing document. The

25   City refused to produce any responsive information.

26   The City's objection that the request "seeks compilation" is partially accurate but does not justify

27   complete refusal to respond. The applicable rule is nuanced: a requesting party cannot force a

28

1  responding party to create an entirely new document that does not exist in any form. However, if

2  data exists in searchable or compliable form, the responding party must provide a reasonable

3  compilation. Additionally, if statistical reports already exist, they must be produced regardless of

4  whether they were created for purposes of this litigation. The City's blanket refusal fails to

5  address these distinctions and appears designed to avoid producing evidence harmful to its

6  defense.

7  The nature of the City's objection suggests that relevant data likely exists. Municipal agencies

8  routinely track law enforcement activities, inspection statistics, and enforcement outcomes. It

9  would be extraordinary for the City to conduct cannabis enforcement operations without

10 maintaining any records of how many inspections were conducted, how many resulted in

11 enforcement actions, or how many administrative warrants were sought and obtained. The City's

12 suggestion that it maintains no such data strains credulity. More likely, the data exists but would

13 reveal information highly damaging to the City's case.

14 Statistical data showing the frequency of cannabis enforcement inspections, the rate of warrant

15 use, and the rate of false positives (cases where cannabis was suspected but not found) would be

16 devastating to the City's position. Such data would likely show a high number of warrantless

17 inspections, a low rate of warrant applications, and a significant rate of cases where no cannabis

18 was ultimately found—precisely the pattern that establishes Monell liability for systematic

19 Fourth Amendment violations. This data would prove that the alleged violations in this case are

20 not isolated but rather exemplify systematic practice. It would demonstrate that the City routinely

21 assumes cannabis operations exist based on limited information, conducts searches without

22 warrants, and frequently finds no cannabis, suggesting a pattern of constitutional violations based

23 on speculation rather than probable cause.

24 This Court should compel the City to: (1) produce any existing statistical reports, databases, or

25 data compilations showing cannabis enforcement activities by OOC, SFFD, or DBI from 2020

26 through 2025; (2) if such data exists in searchable electronic form such as a database or

27 spreadsheet, provide a reasonable compilation showing the total number of cannabis-related

28 MOTION TO COMPEL                                    45

1  inspections and searches, the number conducted with administrative warrants, the number

2  conducted with documented consent, the number conducted without warrant or consent, the

3  number where cannabis was found, and the number where no cannabis was found; and (3) if no

4  such data exists or cannot be reasonably compiled from existing records, provide a verified

5  statement to that effect. This evidence constitutes Monell pattern evidence, would demonstrate

6  the rate of false positives in cannabis enforcement, would prove systematic warrantless search

7  practices, and would be highly probative of municipal custom.

8         8. Request No. 35 - Consent Documentation

9  Request for Production No. 35 sought documents supporting any contention that Mr. Govan-

10  Smith gave consent for the searches, including signed consent forms or recordings of verbal

11  consent. The City did not assert objections to this request but responded that it would "produce

12  photographs and video recordings of the inspections and communications memorializing same."

13  The City's response is insufficient because it fails to address the specific documents requested.

14  The request seeks documentation of consent—signed forms, recorded verbal consent, or written

15  authorization from Mr. Govan-Smith. The City's response indicates it will produce photographs

16  and videos of the searches themselves, but photographs and videos of searches do not establish

17  consent to those searches. The City's failure to state that it will produce consent forms or consent

18  recordings, coupled with its offer to produce only search documentation, suggests that no

19  consent documentation exists.

20  The absence of consent documentation is legally significant. The Fourth Amendment requires

21  that consent to a warrantless search be voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 248-

22  49 (1973). While consent need not be in writing, the absence of any documentation of consent—

23  no signed forms, no recordings of verbal consent, no contemporaneous written

24  memorialization—makes it difficult if not impossible for the City to prove that voluntary consent

25  was given. Without such documentation, the City cannot establish the consent exception to the

26  Fourth Amendment's warrant requirement, the searches were unconstitutional, and no qualified

27  immunity is available to the searching officials.

28

MOTION TO COMPEL           46

1    This Court should compel the City to provide a verified supplemental response stating with

2    precision: "The City has no signed consent forms, no audio or video recordings of verbal

3    consent, and no written authorization from Andrew Govan-Smith consenting to searches of the

4    Subject Properties on June 13, 2023, April 16, 2024, May 1, 2024, or May 2, 2024. Mr. Govan-

5    Smith was not present during the searches. The City's evidence consists only of photographs and

6    video recordings of the searches themselves." This response would eliminate the consent

7    exception to the Fourth Amendment's warrant requirement, would prove that the searches were

8    unconstitutional, would constitute an admissible judicial admission, and would be essential to

9    Defendants / Counter Claimants' case.

10    **H. The City Waived Objections by Producing Documents**

11    The legal standard governing waiver of discovery objections through production is well-

12    established in this Circuit. In Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468,

13    1473 (9th Cir. 1992), the Ninth Circuit held unequivocally that "[w]hen a party produces

14    documents without limitation in response to a discovery request, it waives any objection to the

15    request, even objections asserted in its initial response." This principle reflects the fundamental

16    inconsistency of simultaneously claiming that a request is improper and responding substantively

17    to that request.

18    Application of this principle to the present case demonstrates that the City has waived objections

19    to the vast majority of its responses. The City asserted objections to over forty requests, then

20    proceeded to produce responsive documents for most of those same requests. This conduct

21    establishes waiver through three distinct demonstrations of understanding and compliance.

22    First, by producing documents, the City demonstrated that it understood what was being

23    requested, thereby refuting any claim that requests were vague or ambiguous. A party that truly

24    does not understand what is being requested cannot identify responsive documents to produce.

25    The City's ability to identify and produce documents proves that it understood the scope and

26    subject matter of the requests with sufficient clarity to comply with them.

27    Second, by producing documents, the City demonstrated that it could identify a manageable set

28

1   of responsive documents, thereby refuting any claim that requests were overbroad. A request that

2   is genuinely overbroad would require production of an unmanageable volume of documents or

3   would sweep so broadly that responsive documents could not be practically identified. The City's

4   production proves that it was able to identify responsive documents within a reasonable scope.

5   Third, and most fundamentally, by producing documents, the City made a strategic choice to

6   comply with the requests rather than to stand on its objections. Having made that choice, the City

7   cannot now seek to resurrect objections that it effectively abandoned through production. Under

8   Richmark, the objections are waived regardless of whether they had merit when asserted.

9   The pattern of objection-followed-by-production repeats throughout the City's responses. The

10  City objected to Request No. 2 as overly broad and vague, then produced inspection reports from

11  DBI, SFFD, and OOC. The City objected to Request No. 3 using identical language, then

12  produced field notes, handwritten notices, and inspection summaries. The City objected to

13  Request No. 6 as overly broad and vague, then committed to produce "all photographs and video

14  footage." In each instance, the subsequent production proves that the antecedent objection was

15  unfounded and, under Ninth Circuit precedent, waived.

16  This Court should find that the City has waived all objections to requests where it subsequently

17  produced documents, and should compel full and complete responses to those requests without

18  further objection.

19  **I. The City Failed to Provide Required Privilege Logs**

20  Federal Rule of Civil Procedure 26(b)(5)(A) imposes a mandatory and specific obligation on

21  parties who withhold discoverable information on grounds of privilege. The Rule provides:

22  "When a party withholds information otherwise discoverable by claiming that the information is

23  privileged or subject to protection as trial-preparation material, the party must: (i) expressly

24  make the claim; and (ii) describe the nature of the documents, communications, or tangible

25  things not produced or disclosed—and do so in a manner that, without revealing information

26  itself privileged or protected, will enable other parties to assess the claim."

27  This Rule serves critical functions in the discovery process. It provides the requesting party with

28
MOTION TO COMPEL                                    48

1    sufficient information to assess whether the privilege claim is valid. It permits the requesting

2    party to challenge claims of privilege with specificity. It enables the court to rule on privilege

3    disputes with a full understanding of what documents are at issue. It prevents parties from using

4    privilege claims as a blanket shield to hide potentially discoverable information. The Rule's

5    requirements are not mere formalities—they are substantive protections essential to the proper

6    functioning of discovery.

7    The Ninth Circuit has made clear that failure to comply with Rule 26(b)(5)'s requirements results

8    in waiver of the privilege claimed. In Burlington Northern & Santa Fe Railway Co. v. United

9    States District Court, 408 F.3d 1142, 1149 (9th Cir. 2005), the Ninth Circuit stated definitively:

10   "Failure to provide a privilege log results in waiver of the privilege." This rule reflects the

11   principle that parties cannot expect courts to protect their privilege claims when they fail to

12   satisfy the threshold requirement of identifying what they are withholding and why.

13   Application of these standards to the City's discovery responses reveals wholesale non-

14   compliance with Rule 26(b)(5). The City asserted privilege objections—based on attorney-client

15   privilege, work product doctrine, or deliberative process privilege—in over fifteen requests for

16   production. Despite this widespread assertion of privilege, the City has failed to provide even a

17   single privilege log describing even a single document withheld on grounds of privilege.

18   The requests to which the City asserted privilege objections include, but are not limited to:

19   Request No. 1 (asserting attorney-client privilege, work product, and deliberative process

20   privilege for warrant-related documents); Request No. 4 (asserting work product, attorney-client

21   privilege, and Rule 26(b)(4) protections for investigation documents); Requests No. 9 and 10

22   (asserting work product and attorney-client privilege for internal and external communications);

23   Request No. 11 (asserting attorney-client privilege for communications with City Attorney);

24   Request No. 12 (asserting work product and attorney-client privilege for inter-agency

25   coordination documents); Request No. 13 (asserting work product, attorney-client privilege, and

26   deliberative process privilege for task force documents); and Requests No. 25 and 26 (asserting

27   attorney work product and attorney-client privilege for other lawsuits and court proceedings).

28

MOTION TO COMPEL                                    49

1    For each of these requests, and others where privilege was asserted, the City was required to

2    provide a privilege log describing each withheld document. The log must identify the type of

3    document (email, memorandum, letter, report), the date of the document, the author of the

4    document, the recipient or recipients of the document, the subject matter or a brief description of

5    the content (without revealing privileged information), and the specific privilege claimed

6    (attorney-client privilege, work product doctrine, deliberative process privilege). The City has

7    provided none of this information for any document responsive to any request.

8    The practical effect of this failure is that Defendants / Counter Claimants have no ability to

9    assess whether the City's privilege claims have any merit whatsoever. The City has made blanket

10    assertions of privilege without identifying what documents exist, who created them, when they

11    were created, or what they concern. Defendants / Counter Claimants cannot determine whether

12    documents claimed to be attorney-client communications actually involve communications with

13    attorneys. Defendants / Counter Claimants cannot determine whether documents claimed as

14    work product were actually created in anticipation of litigation. Defendants / Counter Claimants

15    cannot determine whether documents claimed under deliberative process privilege actually

16    involve policy deliberations rather than operational decisions. The City's failure to provide

17    privilege logs leaves Defendants / Counter Claimants, and this Court, entirely in the dark about

18    the basis for the privilege claims.

19    Moreover, many of the City's privilege claims appear facially invalid based on the nature of the

20    requests. Warrant applications, sought in Request No. 1, are factual documents, not legal advice,

21    and are not protected by attorney-client privilege. Public court filings in other cases, sought in

22    Requests No. 25 and 26, are public records not subject to work product protection. Statistical

23    data and audit reports, sought in various requests, are factual materials not subject to deliberative

24    process privilege. Without privilege logs, however, these facial deficiencies cannot be tested, and

25    the City's privilege claims stand as unjustified barriers to discovery.

26    Under binding Ninth Circuit precedent, the consequence of the City's failure is clear: all privilege

27    claims are waived. Burlington Northern, 408 F.3d at 1149. The City cannot now belatedly create

28

1   privilege logs months after its responses were served. The time for compliance with Rule

2   26(b)(5) was when the responses were served. Having failed to comply, the City has waived its

3   privilege objections.

4   This Court should find that all privilege claims asserted in the City's responses are waived due to

5   failure to provide privilege logs, and should compel the City either to: (1) produce all documents

6   for which privilege was claimed but no privilege log was provided; or (2) provide compliant

7   privilege logs describing each withheld document in accordance with Federal Rule 26(b)(5)(A)

8   within thirty days, subject to Defendants / Counter Claimants' right to challenge the privilege

9   claims upon review of the logs; or (3) admit that no responsive documents exist beyond those

10  already produced.

11  **J. Discovery Sought Is Relevant and Proportional**

12  Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and requires that

13  discovery be both relevant to the claims or defenses in the case and proportional to the needs of

14  the case. The City has objected to numerous requests on proportionality grounds, but a proper

15  analysis of the Rule 26(b)(1) factors demonstrates that the discovery sought is unquestionably

16  both relevant and proportional.

17          1. Relevance of Discovery to Claims and Defenses

18  The relevance of the discovery sought is beyond reasonable dispute. The discovery relates

19  directly to the core issues in this case: whether the City and its employees violated Mr. Govan-

20  Smith's Fourth Amendment rights by conducting warrantless searches without consent or exigent

21  circumstances, and whether the City can be held liable for such violations under Monell.

22  Warrant applications and authorization documents relate directly to whether the searches were

23  supported by warrants, which is the foundational question in any Fourth Amendment claim.

24  Policies on Fourth Amendment compliance and warrant procedures relate directly to Monell

25  liability (was there a municipal policy authorizing violations) and to qualified immunity (did

26  officials know that warrants were required). Training materials on constitutional requirements

27  relate directly to qualified immunity (were officials trained that warrants were required) and to

28

1    Monell liability (did inadequate training constitute deliberate indifference). Pattern evidence of

2    other warrantless searches relates directly to Monell liability (is there a custom of Fourth

3    Amendment violations). Other lawsuits alleging similar violations relate directly to Monell

4    liability (notice to the municipality of recurring problems) and to pattern evidence. Statistical

5    data on enforcement actions relates directly to systematic practice and Monell custom. Consent

6    documentation relates directly to whether the consent exception to the warrant requirement

7    applies.

8    Each category of discovery sought goes to an essential element of Defendants / Counter

9    Claimants' claims or to an anticipated defense. Without this discovery, Defendants / Counter

10   Claimants cannot prove municipal liability under Monell, cannot defeat qualified immunity

11   defenses, cannot establish the Fourth Amendment violation, and cannot effectively prosecute

12   their constitutional claims. The relevance is clear, direct, and essential.

13         2. Proportionality Under Rule 26(b)(1) Factors

14   Federal Rule 26(b)(1) requires consideration of six specific factors in assessing proportionality:

15   the importance of the issues at stake in the action; the amount in controversy; the parties' relative

16   access to relevant information; the parties' resources; the importance of the discovery in

17   resolving the issues; and whether the burden or expense of the proposed discovery outweighs its

18   likely benefit. Analysis of each factor demonstrates that the discovery is proportional.

19   The importance of the issues at stake weighs heavily in favor of permitting discovery. This case

20   involves alleged violations of the Fourth Amendment by government officials acting under color

21   of state law. Few issues in federal litigation are more important than protecting constitutional

22   rights from government overreach. The Supreme Court has emphasized repeatedly that civil

23   rights litigation serves vital functions in vindicating individual rights and deterring official

24   misconduct. See, e.g., Carey v. Piphus, 435 U.S. 247, 266 (1978). When constitutional rights

25   guaranteed by the Bill of Rights are at stake, the issues are of the highest importance.

26   The amount in controversy is substantial. Defendants / Counter Claimants seek compensatory

27   damages for constitutional violations, punitive damages if violations were willful, and attorney's

28

fees. The City seeks over $75,000 in penalties in its related state court action. The financial stakes justify comprehensive discovery on the merits of the constitutional claims.

The parties' relative access to relevant information weighs heavily in favor of compelling discovery from the City. The City possesses all of the documents sought—they are the City's own policies, training materials, statistical databases, and records of other lawsuits. Defendants / Counter Claimants have no access to these documents except through discovery. The City cannot claim burden in producing its own documents that are already in its possession and control.

The parties' resources also weigh in favor of permitting discovery. The City is a major municipality with the full resources of the City Attorney's Office, multiple attorneys assigned to this case, and the ability to command assistance from multiple municipal departments in responding to discovery. Mr. Govan-Smith is a seventy-year-old small business owner proceeding pro se with limited financial resources. If discovery is to be limited based on resources, it should be limited on the City, not on Defendants / Counter Claimants.

The importance of the discovery in resolving the issues is critical and dispositive. Policies are essential to proving Monell liability, which requires proof of policy or custom. Training materials are essential to defeating qualified immunity, which turns on whether officials knew or should have known that their conduct violated clearly established law. Pattern evidence is essential to proving custom and practice. Individual testimony from the officers who conducted the searches is essential because they are the only witnesses to what occurred. Without this discovery, Defendants / Counter Claimants cannot prove their claims or defend against the City's allegations. The discovery is not merely helpful; it is essential.

The burden or expense of the proposed discovery does not outweigh its likely benefit, and indeed the burden is minimal. The policies already exist in the City's policy manuals; the burden of producing them is limited to identifying the relevant sections and making copies. The training materials already exist; they were created for training purposes and are maintained in the ordinary course of business. The statistical data, if it exists, is maintained in electronic databases that can be queried with minimal effort. The individual training records are maintained as part of

1   personnel files and can be produced subject to protective order if privacy concerns exist. The

2   records of other lawsuits are either public records or are maintained by the City Attorney's Office

3   in the course of defending litigation.

4   None of this discovery requires the City to create new documents, conduct new research, or

5   undertake burdensome analysis. All of it involves producing documents the City already

6   possesses and maintains. The burden is minimal, while the benefit to resolving constitutional

7   claims is maximal. The discovery is proportional under any reasonable application of Rule

8   26(b)(1).

9   **V. CONCLUSION**

10  The City has engaged in systematic obstruction of discovery designed to prevent Defendants /

11  Counter Claimants from obtaining evidence essential to their constitutional claims. This

12  obstruction takes two principal forms: categorical refusal to permit discovery from Individual

13  Counter Defendants based on a legal theory rejected by every federal circuit, and improper

14  boilerplate objections to Requests for Production asserted without case-specific analysis and in

15  violation of Federal Rule requirements.

16  With respect to Individual Counter Defendants, every federal circuit to address the issue has

17  rejected the City's position. The D.C. Circuit directly confronted the identical argument the City

18  makes here and held unequivocally: "We reject this argument." Bowie v. Maddox, 642 F.3d

19  1122, 1131-32 (D.C. Cir. 2011). The Second, Tenth, Eleventh, and Third Circuits have reached

20  the same conclusion. The law is clear and uniform: official capacity designation affects who is

21  liable for a judgment, but it does not create immunity from discovery obligations. The City's

22  contrary position lacks any supporting authority and conflicts with binding precedent.

23  With respect to Requests for Production, the City has violated basic discovery rules through

24  systematic use of boilerplate objections without case-specific analysis, wholesale failure to

25  provide mandatory privilege logs for over fifteen privilege claims, categorical refusal to produce

26  critical evidence including policies, training materials, and pattern evidence, and the

27  contradictory practice of objecting to requests then producing documents in response to those

28  MOTION TO COMPEL                                54

1    same requests, thereby waiving the objections under Ninth Circuit law.

2    The City's discovery responses contain critical admissions with profound legal significance. The

3    City has admitted that no search warrant applications exist, establishing a Fourth Amendment

4    violation as a matter of law. The City has failed to produce any photographs, laboratory testing,

5    or physical evidence of cannabis, demonstrating that its allegations of cannabis operations rest on

6    speculation rather than proof. The City has failed to produce any documentation of consent,

7    eliminating the consent exception to the warrant requirement.

8    These admissions establish Fourth Amendment violations, prove that the City's allegations are

9    false and unsupported by evidence, and eliminate any qualified immunity defense for the

10   Individual Counter Defendants who conducted warrantless searches knowing that warrants were

11   required under clearly established law dating back nearly sixty years to Camara v. Municipal

12   Court, 387 U.S. 523 (1967).

13   The Individual Counter Defendants possess unique, firsthand knowledge that cannot be obtained

14   through entity-level interrogatory responses drafted by the City Attorney's Office months after

15   the events. Each individual personally witnessed the searches, made decisions about entering

16   without warrants, and has personal observations essential to Defendants / Counter Claimants'

17   claims and defenses. Their testimony is not duplicative of entity-level responses; it is the only

18   means of discovering what actually occurred during the searches.

19   Policies, training materials, and pattern evidence are not tangential to Defendants / Counter

20   Claimants' claims; they are essential to those claims. Policies are essential to proving Monell

21   municipal liability, which requires proof of policy or custom. Training materials are essential to

22   defeating qualified immunity, which turns on whether officials knew or should have known their

23   conduct violated clearly established law. Pattern evidence is essential to proving custom and

24   practice under Monell. Without this discovery, Defendants / Counter Claimants cannot prove

25   their constitutional claims.

26   For the foregoing reasons, Defendants / Counter Claimants respectfully request that this Court

27   enter an order:

28

MOTION TO COMPEL                                    55

With respect to Individual Counter Defendants: compelling Individual Counter Defendants Dennis Sy, Chris Francis, Gary Clifton, Victor Wong, Chelsea Liu, and Brandon Murray to provide full, complete, and verified responses to Interrogatories (Set One) and Requests for Admission (Set One) within thirty days of the Court's order; and authorizing Defendants / Counter Claimants to notice depositions of all Individual Counter Defendants at reasonable dates, times, and locations to be determined by Defendants / Counter Claimants, with each deposition not to exceed seven hours absent agreement of the parties or further order of this Court.

With respect to Requests for Production: compelling the City to provide further responses to Requests for Production Nos. 1, 5, 14, 15, 16, 17, 18, 19, 20, 21, 25, 26, 27, and 35 without improper objections within thirty days of the Court's order; compelling the City to produce all documents responsive to said requests, with privilege logs complying with Federal Rule 26(b)(5) for any documents withheld on grounds of privilege; and compelling the City to provide verified supplemental responses confirming that no warrant applications exist, that no consent documentation exists, and that no photographs, laboratory testing, or physical evidence of cannabis exists.

DATED: January 22, 2026

Respectfully submitted,

Andrew James Govan-Smith

Defendants / Counter Claimants

MOTION TO COMPEL                    56

**INDEX TO EXHIBITS**

| Exhibit | Description |
|---|---|
| A | Plaintiff City and County of San Francisco's Responses to Defendant Andrew Govan - Smith's Document Demand, Set One |
| B | Document Demand to City and County of San Francisco, Office of City Attorney, Set One |
| C | Interrogatories to Captain Dennis Sy |
| D | Interrogatories to Chris Francis |
| E | Interrogatories to Insp Gary Clifton |
| F | Interrogatories to Lt. Victor Wong |
| G | Interrogatories to Chelsea Liu |
| H | Interrogatories to Brandon Murray |
| I | Request for Admissions to Dennis Sy |
| J | Requests for Admissions to Chelsea Liu |
| K | Requests for Admissions to Victor Wong |
| L | Requests for Admissions to Chris Francis |
| M | Requests for Admissions to Gary Clifton |
| N | Requests for Admissions to Brandon Murray |
| O | Letter from Deputy City Attorney Sabrina M. Berdux Objecting to Individuals Discovery Requests |
| P | Declaration of Andrew James Govan- Smith |

Motion to Compel

1